**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  | Case No. 1:22-cv-07500-GHW |
|---|---|
| Dreamtitle Publishing, LLC, a California Company,<br><br>                    Plaintiffs,<br>          v.<br><br><br>Penguin Random House LLC, a Delaware company; Nancy Paulson Books; DOES 1-50, inclusive<br><br>                    Defendants |  |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6) MOTION TO**

**DISMISS**

## **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT……………………………..1

II.     FACTUAL STATEMENT………………………………………………………..2

III.    ARGUMENT………………………………………………………………...4

        A.  Plaintiff Plausibly Alleges its Infringement Claim……………………………4

        B.  The Works at Issue are Substantially Similar……………………………………..5

                1.  The Theme, Tone, and Mood are Substantially Similar………………..8

                2.  The Characters, Plot, and Sequence of Events are Substantially
                    Similar………………………………………………………………...9

                3.  The Imagery in Each Book is Substantially Similar…………………...12

                4.  Defendants Fail to Address Numerous Similarities……………………14

                5.  Unprotectable Elements Can be Protectable When Creatively
                    Selected, Arranged, and Considered in a Selection and
                    Arrangement Analysis……………………………………………………15

                6.  Whether Only Unprotectable Ideas or *Scene-a-Faire* Have
                    Been Copied Should Be Reserved for a Jury…………………………..17

                7.  Copying of Even a Portion of Plaintiff's Book is Copyright
                    Infringement…………………………………………………………18

        C.  The Court May Consider the Expert Reports Attached to the FAC……………..20

                1.  The Export Report are Attached to the FAC and are Therefore
                    Part of the Pleadings…………………………………………………...20

                2.  The Expert Reports are Incorporated by Reference……………………23

                3.  The Expert Reports May Be Relied Upon to Establish Substantial
                    Similarity……………………………………………………………24

IV.     LEAVE TO FURTHER AMEND SHOULD BE GRANTED…………........................27

V.      CONCLUSION…………………………………………………………………..27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (S. Ct. 2009) ..................................................................................2

*Baxter v. MCA, Inc.,*
  812 F.3d 421 (9th Cir. 1987)................................................................................7

*Blakeman v. The Walt Disney Co.,*
  613 F. Supp. 2d 288 (E.D.N.Y. 2009).................................................................18

*Boisson v. Banian, Ltd,*
  273 F.3d 262 (2d Cir. 2001)................................................................6, 15, 16

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569 (S. Ct. 1994).................................................................................7

*Castorina v. Spike Cable Networks, Inc.,*
  784 F. Supp. 2d 107 (E.D.N.Y. 2011).................................................................1

*City Merchandise, Inc. v. Broadway Gifts, Inc.,*
  2009 WL 195941 (S.D.N.Y. 2009)......................................................................6

*Computer Assocs. Int'l, Inc. v. Altai, Inc.,*
  982 F.2d 693 (2d Cir. 1992)..........................................................................24, 26

*Crane v. Poetic Prod. Ltd.,*
  593 F. Supp. 2d 585 (S.D.N.Y.)...........................................................................5

*DeLuca v. AccessIT Grp., Inc.,*
  695 F. Supp. 2d 54 (S.D.N.Y. 2010)...................................................................23

*Detective Comics v. Bruns Publications,*
  111 F.2d 432 (2d Cir. 1940)................................................................................20

*DiFolco v. MSNBC Cable L.L.C.,*
  622 F.3d 104 (2d Cir. 2010)................................................................................22

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) ..............................15

*Hall v. Swift,*
  786 Fed. Appx 711 (9th Cir. 2019) ...............................................................11, 12

*Hamil Am. Inc. v. GFI,*
  193 F.3d 92 (2d Cir. 1999).............................................................................4, 6

*Helprin v. Harcourt, Inc.,*
  277 F. Supp. 2d 327 (S.D.N.Y. 2003)................................................................21

*Hoehling v. Universal City Studios, Inc.,*
  618 F.2d 972 (2d Cir. 1980)..................................................................................4

*Hokin v. Skyy Spirits Inc.,*
  225 F.3d 1068 (9th Cir. 2000)............................................................................18

*Horizon Comics Prods., Inc. v. Marvel Ent.,* LLC,
  246 F. Supp. 3d 937 (S.D.N.Y. 2017)................................................................17

*Int'l Diamond Importers, Inc. v. Oriental Gemco* (N.Y.), Inc.,
  64 F. Supp. 3d 494 (S.D.N.Y. 2014)............................................................15, 16

*Jordache Enterprises, Inc. v. Affiliated FM Ins. Co.,*
  2022 WL 986109 (S.D.N.Y. Mar. 31, 2022) ....................................................24

**OPPOSITION TO RULE 12(B)(6) MOTION TO DISMISS**

*Jorgensen v. Epic/Sony*,
  351 F.3d 46 (2d Cir. 2003) ...................................................................................24
*Keystone Mfg. Co. v. Jaccard Corp.*,
  394 F. Supp. 2d 543 (W.D.N.Y. 2005) ..................................................................5
*Klauber Brothers, Inc. v. Russell-Newman, Inc.*,
  2013 WL 1245456 (S.D.N.Y. Mar. 26, 2013) .......................................................5
*Klauber Brothers, Inc. v. URBN US Retail LLC*,
  2023 WL 1818472 (S.D.N.Y., 2023) ..................................................................5, 6
*Knitwaves, Inc. v. Lollytogs Ltd.*,
  71 F.3d 996 (2d Cir. 1995) .....................................................................................5
*Laureyssens v. Idea Grp., Inc.*,
  964 F.2d 131 (2d Cir. 1992) .................................................................................25
*Lewinson v. Henry Holt & Co., LLC*,
  659 F. Supp. 2d ......................................................................................15, 18, 20
*Meeropol v. Nizer*,
  560 F.2d 1061 (2d Cir. 1977) ...............................................................................15
*Mena v. Fox Entm't Grp., Inc.*,
  2012 WL 4741389 ...................................................................................................6
*New Old Music Grp., Inc. v. Gottwald*,
  122 F. Supp. 3d 78 (S.D.N.Y. 2015) ......................................................................1
*Nicassio v. Viacom Int'l, Inc.*,
  309 F.Supp. 3d 381 .................................................................................................8
*Ong v. Chipotle Mexican Grill, Inc.*,
  294 F. Supp. 3d 199 (S.D.N.Y. 2018) ......................................................22, 23, 24
*Penguin Random House LLC v. Colting*,
  270 F.Supp.3d 736 (2017) ...............................................................................19, 20
*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ...............................................................7, 17, 22, 23
*Reyher v. Children's Television Workshop*,
  533 F.2d 87 (2d Cir. 1976) ..............................................................................2, 20
*Riverkeeper, Inc. v. Coeymans Recycling Ctr., LLC*,
  2022 WL 17819738 (N.D.N.Y. Dec. 20, 2022) ..............................................21, 22
*Ronzani v. Sanofi S.A.*,
  899 F.2d 195 (2d Cir. 1990) .................................................................................27
*Shaw v. Lindheim*,
  919 F.2d 1353 (9th Cir. 1990) ................................................................................9
*Sheldon v. Metro–Goldwyn Pictures Corp.*,
  81 F.2d 49 (2d Cir.1936) ...................................................................................2, 15
*Silberstein v. Fox Ent. Grp., Inc.*,
  424 F. Supp. 2d 616 (S.D.N.Y. 2004) ..................................................................25
*Thomas v. Westchester Cnty. Health Care Corp.*,
  232 F. Supp. 2d 273 (S.D.N.Y. 2002) ..................................................................22
*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
  338 F.3d 127 (2d Cir. 2003) ...................................................................................8
*Universal Pictures v. Harold Lloyd Corp.*,
  162 F.2d 354 (9th Cir. 1947) ..................................................................................7

iv

*Walker v. Time Life Films, Inc.*,
    784 F.2d 44 (2d Cir. 1986) ............................................................................22, 26

*Walkie Check Prods., LLC v. ViacomCBS Inc.*,
    2022 WL 2306943 (S.D.N.Y. June 27, 2022) ...........................................................2

*Williams v. Crichton*,
    84 F.3d 581 (2d Cir. 1996) ....................................................................2, 7, 18, 20

*Williams v. Gaye*,
    895 F.3d 1106 (9th Cir. 2018) .........................................................................7, 11

**Statutes**

17 U.S.C. §410(c) ....................................................................................................16

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................2

Fed. R. Civ. P. 15 ....................................................................................................27

**OPPOSITION TO RULE 12(B)(6) MOTION TO DISMISS**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The motion filed by Penguin Random House, and its imprint Nancy Paulson Books, fails.
Plaintiff, Dreamtitle Publishing, LLC ("Dreamtitle"), filed its First Amended Complaint
("FAC") on January 20, 2023, and that FAC adequately states its causes of action and alleges
substantial similarity. *See* Dkt. No. 24, FAC ¶¶27-34. Defendants, while *admitting to obtaining* a
copy of Plaintiff's book *before* "creating" their own book, nevertheless attempt to avoid liability
for infringement by urging the court to disregard the constellation of key similarities between the
works at issue and focus instead on dissimilarities between discrete, disengaged elements. But
their arguments are unavailing. Plaintiff does not claim to "own a monopoly" over the phrase *"I
Am"* or the concept of inspiring self-esteem in Black children but instead claims rights in its
creative expression, including its creative selection, arrangement, and expression of its book's
elements. Defendants' Motion to Dismiss (the "Motion") fails for multiple reasons:

First, the works have clear and substantial similarities that are probative of copying.
Plaintiff's work entitled *I'm a Brilliant Little Black Boy!* (the "Book") and Defendants' work
entitled *I Am Every Good Thing* (the "Defendant's Book") are the exact same length and form
and express strikingly similar stories with virtually indistinguishable themes, scenes, images, and
characters. At this stage in the proceedings, the appropriate analysis of the two works reveals that
the works **are** substantially similar. The analysis compares "the original way in which the author
has selected, coordinated, and arranged the elements" of the work to the way in which the
Defendants selected, coordinated, and arranged the elements of their work. *Castorina v. Spike
Cable Networks, Inc.*, 784 F. Supp. 2d 107, 110 (E.D.N.Y. 2011). In a selection and arrangement
analysis, a focus on any one element is effectively irrelevant. *New Old Music Grp., Inc. v.
Gottwald*, 122 F. Supp. 3d 78, 94 (S.D.N.Y. 2015). Furthermore, the test must consider

similarities in "mood, details or characterization," *Reyher v. Children's Television Workshop*, 533 F.2d 87, 92 (2d Cir. 1976), alongside the "total concept and feel, theme, characters, plot, sequence, pace, and setting." *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996). Under this analysis, the FAC plausibly alleges copying as required by Fed.R.Civ.P. 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (S. Ct. 2009).

Second, dissimilarities between the works should be disregarded and even material distinctions between the two works do not establish, as a matter of law, that two works are not substantially similar. *See Walkie Check Prods., LLC v. ViacomCBS Inc.*, No. 21 CIV. 1214 (KPF), 2022 WL 2306943, at *9 (S.D.N.Y. June 27, 2022); *see also, Sheldon v. Metro–Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d Cir.1936) ("[I]t is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate.").

Third, Defendants ask the Court to ignore critical evidence, including expert opinion establishing that the works are, in fact, substantially similar. The experts' reports, as attached to the FAC, are properly considered here. Defendants' challenge to the admissibility of these expert reports should be rejected as they go to the weight of the testimony and not the admissibility. Moreover, contrary to Defendants' position that there is a bar to consideration of said reports at this stage of the proceedings, the caselaw reflects that such reports are admissible.

Finally, the question of copying is a factually intensive inquiry that requires the factfinder to consider expert testimony on   at least two issues: (1) the qualitative importance of certain similarities; and (2) *scenes-a-faire*, among others.

## II.    <u>FACTUAL STATEMENT</u>

In 2016, DreamTitle published *I'm a Brilliant Little Black Boy!* (the "Book"), a children's picture book that was co-written by Betty Bynum ("Bynum") and her son, Joshua B. Drummond,

and illustrated by Brian McGee. (FAC ¶12). The Book is the most recent release in DreamTitle's "I'm a Girl!" collection (the "Collection") (FAC ¶14), consisting of the published books entitled *I'm a Pretty Little Black Girl!* (2013) and *I'm a Lovely Latina* (2015). *Id*. All of the books in the Collection are illustrated children's books curated to inspire children from marginalized backgrounds to have a positive self-image. (FAC ¶15). The Book was registered with the U.S. Copyright Office on September 4, 2020. (FAC ¶16)

Prior to, and soon after, the Book's publication, Ms. Bynum promoted it on various media channels. (FAC ¶18) Bynum, the owner of DreamTitle, appeared on the Steve Harvey Show in 2016 to promote the Book. *Id.* This show was estimated to garner 3.5 million views per episode at the time. *Id*. In the same year, the Book also received endorsements from well-known actors and members of the Black entertainment community including Denzel Washington and Samuel L. Jackson, for the "#BBrilliant campaign." (FAC ¶20). The Book has amassed approximately 15,780 sales since 2016 and is available for purchase at major retailers such as Target and Amazon. (FAC ¶¶22,23).

In 2020, after Plaintiff's Book had achieved much publicity, Defendants published *I Am Every Good Thing* (the "Defendants' Book"), an illustrated children's book allegedly written by Derrick Barnes and Gordon C. Jones. (FAC ¶25) This book was also designed to inspire young Black boys. On June 25, 2022, the Defendants' Book was registered with the U.S. Copyright Office. The Defendants' Book contains significant portions of substantially the same copyrightable expression as the Book, in addition to the nearly identical selection and arrangement of both protected and non-protected elements. (FAC ¶26).

Several experts provided preliminary reports regarding the substantial similarity of the two books. (FAC ¶28-31). Each found that the Defendants' Book was so similar to the Plaintiff's Book

that, in the absence of copying, it could not exist. In fact, one expert in illustration opined that the books' *illustrations*, which are clearly protectable, are "disturbingly similar." (FAC ¶30). It is respectfully requested that the Court review said reports as they are sensible, possess intellectual integrity, and are compelling, especially in their totality. *See* FAC, Exhs H, J, K, L.

### III.   ARGUMENT

#### A.   Plaintiff Plausibly Alleges its Infringement Claim

In order to survive a motion to dismiss, a claim for copyright infringement need only allege (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant. *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) (citations omitted). Infringement requires a finding that "(1) the defendant[s] ha[ve] actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Id*. at 99. (quotations and citations omitted). The final determination of substantial similarity is generally reserved for the factfinder. *See, e.g., Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2d. Cir. 1980) ("because substantial similarity is… an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation.")

Here, Plaintiff has alleged that it owns the copyright in the work at issue. (FAC ¶16) And Plaintiff has alleged that Defendants had an opportunity to access *I'm a Brilliant Little Black Boy!* due to, *inter alia*, the book's promotional publicity tour, celebrity endorsements, and sales. (FAC ¶24). For purposes of the instant motion, Defendants *concede* that they obtained a copy of Plaintiff's Book. *See,* Defendant's Motion to Dismiss (Dkt. No. 31), fn 5. Defendants' challenge only Plaintiff's showing as to substantial similarity, but the FAC alleges qualitatively and quantitatively substantial and plausible allegations of similarities between the two works. (*See* FAC ¶¶27-34). Plaintiff also incorporates expert reports to assist the Court and jury in assessing

the similarities in tone, characters, imagery, plots, and sequence of events. *Id.* While some of these similarities may be obvious, some of them are nuanced and amenable to expert analysis, as discussed, *infra*.[1]

Defendants have not and cannot prove that *no* reasonable trier of fact could find the works to be substantially similar, as is required to prevail on this Motion. *Crane v. Poetic Prod. Ltd.*, 593 F. Supp. 2d 585, 591 (S.D.N.Y.), aff'd, 351 F. App'x 516 (2d Cir. 2009) (emphasis added). This is a heavy burden to meet, and motions like this one are discouraged in copyright infringement cases. *Id.*; see also *Klauber Brothers, Inc. v. Russell-Newman, Inc., et al*. No. 11-Civ.-4985PGG, 2013 WL 1245456, at *6 (S.D.N.Y. Mar. 26, 2013), *aff'd sub nom. Klauber Bros. v. Bon-Ton Stores, Inc.*, 557 F. App'x 77 (2014), ("[t]he question of substantial similarity typically presents an extremely close question of fact…questions of noninfringment have traditionally been reserved for the trier of fact."). Defendants fail to meet this high bar.

**B.      The Works at Issue are Substantially Similar**

Defendants have not established a dispositive lack of similarity. To the contrary, a review of the two books reveals them to contain significant portions of overlap. In reviewing the issue of substantial similarity, courts ask whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Klauber Brothers, Inc. v. URBN US Retail LLC*, 2023 WL 1818472, at *4 (S.D.N.Y., 2023), quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1001 (2d Cir. 1995) (citation omitted). This "inquiry necessarily focuses on

---

[1] Defendants challenge the preliminary report by Warren Drummond on the grounds that his personal relationship with Ms. Bynum is disqualifying. While even biased experts are commonly considered, and his opinion reflects a considered analysis, Plaintiff withdraws this report to reduce the hyperbole regarding this issue. *See, e.g., Keystone Mfg. Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543 (W.D.N.Y. 2005)(Vice President and 40% shareholder of corporation could testify as an expert, and issues of bias and credibility could be raised on cross-examination). Plaintiff will designate another expert on this issue at the appropriate time.

**OPPOSITION TO RULE 12(B)(6) MOTION TO DISMISS**

whether the alleged infringer has misappropriated the original way in which the author has selected, coordinated, and arranged the elements of his or her work." Id. (internal quotation marks and citations omitted).

Defendants argue that Plaintiff's complaint "has fallen short" in part because Plaintiff does not allege any literal copying of exact passages.[2] But a Plaintiff is not required to do so. Instead, the Court should look to the "total concept and feel" of the protected work and keep in mind that the creative selection and arrangement of otherwise unprotectable elements is itself protectable. *City Merchandise, Inc. v. Broadway Gifts, Inc.,* 2009 WL 195941, at *2 (S.D.N.Y. 2009). Thus, the Court should consider in its analysis even those elements it finds unprotectable to ascertain the "similarities in such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting." *Boisson v. Banian, Ltd,* 273 F.3d 262, 272-273 (2d Cir. 2001) (quotation omitted).

Defendants urge the Court to separate out each element of the stories and compare them in isolation. However, this contravenes applicable law, which holds that "excessive splintering" of the elements of the work would "result in almost nothing being copyrightable because original works broken down into their composite parts would usually be little more than basic unprotectible elements." *Gottwald, supra* at 94, quoting *Mena v. Fox Entm't Grp., Inc.,* No. 11–CV–5501 (BSJ), 2012 WL 4741389, at *4. While Defendants' attempt to deconstruct the works into their constituent elements, and then eliminate each separate element as unprotectable, the proper approach is holistic and considers the total concept and feel of the works, as well as the creative selection and arrangement of various elements, and finds infringement even when less than the entire work is copied. *See Baxter v. MCA, Inc.* 812 F.3d 421, 425 (9th Cir. 1987) ("Even if a copied

---

[2] Which is, in fact, not even the case, as discussed *infra*.

**OPPOSITION TO RULE 12(B)(6) MOTION TO DISMISS**

portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity.")

In reviewing the books at issue, the Court's analysis should not focus on the differences between the two works because, as a matter of law, differences, even substantial ones, do not preclude a finding of substantial similarity. *Walkie Check Prods., LLC v. ViacomCBS Inc.*, at *9. And "[c]omplete or substantial identity between the original work and the copy is not required." *Universal Pictures v. Harold Lloyd Corp.,* 162 F.2d 354, 360 (9th Cir. 1947). Thus, the Defendants may still be found to have infringed Plaintiff's copyrights in the work even if they did not exactly copy it by "parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of [unprotectible components] —are considered in relation to one another." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (citation omitted). Indeed, "only when the similarities between the protected elements of plaintiff's work and the allegedly infringing work are of small import quantitatively or qualitatively that the defendant will be found innocent of infringement[.]" *Williams v. Crichton*, 84 F.3d 581, 588 (2nd Cir.1996)(internal quotation and citation omitted). That is not the case here.

Given the endless ways in which a work like Plaintiff's Book can be expressed, it receives "thick" copyright protection. *See, e.g., Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 586 (S. Ct. 1994)(some works are closer to the core of intended copyright protection than others); *see also Williams v. Gaye* 895 F.3d 1106, 1120 (9th Cir. 2018) (where there is a "wide range of expression… protection is 'broad'"). Applying the above directives, a factfinder could readily conclude that the similarities between the two books with respect to characters, plot, sequence of events, theme, tone, mood, and imagery is substantial, if not striking. As the similarities between the two books

**OPPOSITION TO RULE 12(B)(6) MOTION TO DISMISS**

are not "a random scattershot of various aspects," *Nicassio v. Viacom Int'l, Inc.* 309 F.Supp. 3d 381, 394-95, or "similarities at a high, abstract level," as Defendants claim— the "total concept and feel" of the two works are significantly similar and the Motion fails. *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 130 (2d Cir. 2003).

### 1.      The Theme, Tone, and Mood are Substantially Similar

The overarching theme in Plaintiff's Book is the promotion of self-esteem and the empowerment of young Black boys through an exploration of the boundless ways, big and small, that they can be empowered. Plaintiff's Book does so by highlighting the multi-dimensional characteristics and interests of Black male children, showing a sequence of Black boys at play, coming together, imagining themselves as superheroes, succeeding at sports and music, and engaging in scientific exploration and discovery. It imparts this theme on nearly every page with the young black male protagonist affirming that "I am…" in connection with something positive related to the image on the page. The book's tone is overall celebratory, earnest and heartfelt, focusing on an easily understandable positive message rather than humor or specific narratives.

Defendant's Book has an identical theme and manner of expressing the same. *I am Every Good Thing* also imparts a message of empowerment for young Black boys by presenting the boundless ways they can be and do anything and everything. Defendants' Book also highlights the multi-dimensional facets of Black male children with a sequence of images showing Black boys at play, coming together, imagining themselves as superheroes, succeeding at sports and music, and engaging in scientific discovery and exploration. Just as in Plaintiff's Book, Defendant's Book imparts its message with text affirmations beginning with "I am…" on virtually every page. Defendant's Book also contains an earnest and heartfelt tone, sticking to its easily understandable message without making jokes or presenting a specific narrative. As one expert notes in his

preliminary report, "the execution and interpretations of those concepts … is what was copied along with the unique layouts and character posing found in the *I'm A Brilliant Little Black Boy!* book." *See* FAC, Exh. L (Expert Report of Lawrence Christmas).

The tone of Plaintiff's Book is joyful and loving and the concepts are expressed with a sense of empathy and inclusiveness. Plaintiff's Book is upbeat and encouraging, as represented by uplifting visuals and a motivational framing sequence. Defendants' Book employs a qualitatively identical theme, tone, and mood. The Defendants' Book is written with the same uplifting tone that is used to empower the Black boy characters in both books. Accordingly, a reasonable juror could find that the themes, tone, and mood of the works are at least substantially similar, and Defendants' Motion fails.

### 2.      The Characters, Plot, and Sequence of Events are Substantially Similar

Both works present at exactly 32 pages and are almost identically sized, with affirmational and empowering sequences containing discrete scenes of young Black boys in varied (but substantially overlapping) states of activity and interest. Both books deploy the same double-paged manner of presentation, virtually identical word choice for specific scenes, and overall eschew a traditional narrative structure in favor of individual, largely unrelated scenes. A reasonable juror could find the works substantially similar given a reasonable viewer's subjective interpretation, and  where "reasonable minds could differ on the issue of substantial similarity […] summary judgment is improper." *Shaw v. Lindheim* 919 F.2d at 1354.

Plaintiff's Book primarily presents a sequence of affirmational scenes and activities of young Black boys being assured of their worth, achieving great things, and finding joy in each other and themselves. This sequence is presented with a framing narrative of a grade-school aged Black boy named Joshua, who is the central character of these scenes, and is often surrounded by

other young Black boys. (FAC ¶31). Over the course of the book, Joshua leaps through the air like a superhero (FAC ¶31, Exh. A p.10), makes hip hop music with his friends (FAC ¶31, Exh. A p.9), gets lifted up for a dunk in a game of basketball (FAC ¶31, Exh. A p.14), and peers through the lens of a telescope while imagining what could be found in outer space (FAC ¶31, Exh. A p.18).

Defendants' Book is virtually identical in narrative structure and in its characters. Defendants' Book presents a sequence of affirmational scenes and activities of young Black boys while accompanying text speaks to their worth, their ability to achieve great things, and how they can find joy in each other and themselves. Defendant's Book lacks a framing narrative, but all its scenes depict grade-school-aged Black boys, with one boy of similar appearance to Joshua framed as the central character in each scene, surrounded by other similarly aged Black boys. The Defendants' Book shows these Black boys flying through the air like a superhero (FAC ¶31, Exh. H p.5), making hip hop music with their friends (FAC ¶31, Exh. H p.13), getting lifted up for a dunk in a game of basketball (FAC ¶31, Exh. H p.14) and peering through the lens of a microscope while accompanying text and imagery discuss using a telescope and what you could see in outer space. (FAC ¶31, Exh. H p.8).

In Plaintiff's Book, each short episode in Joshua's life is accompanied by visual images illustrating stand-alone segments. Each panel highlights a particular skill, interest, or trait that Joshua learns or values. The layout remains consistent throughout, with each specific attribute or skill presented on a separate double page spread. (FAC ¶31). Each of the scenes in Defendants' book is a stand-alone segment highlighting a particular interest, skill, or activity. The Defendants' Book has a virtually identical layout to Plaintiff's book, employing the same consistent double-page spread to convey the same themes and content.

**OPPOSITION TO RULE 12(B)(6) MOTION TO DISMISS**

Plaintiff's Book employs other characters which serve as support for Joshua and expand the representation of the Black male child – some with darker skin tones, different hairstyles, and body types. (FAC ¶31). Similarly, in addition to the main character in Defendants' Book, the young Black boys each look different, providing the same wide representation of Black male youth. *Id.* Thus, both books showcase a range of images of the Black male child. Still, the main characters on each page of Defendants' Book share the same skin color and physical appearance as Joshua; each is lean (but not muscular) with just slightly above-average height. *Id*. This is not a coincidence. These are intentional choices made by the Defendants given a wide range of choices that were available. The Court should view these similarities in context of the "thick protection" that attaches to Plaintiff's Book due to the numerosity of **choices** available to an author to use to express a particular idea. *See, Williams, supra,* at 1120 (when protection is "broad," a work will infringe if its "substantially similar" to the copyrighted work.).

Defendants' Book also directly copies word choices from Plaintiff's Book. For example, in *I'm A Little Black Boy!*, the words "BOOM BOOM", "rhyme" and "time" are written as couplets. (FAC ¶31, Exh. A: 8) The hip-hop page of *I Am Every Good Thing* also uses the same words, using the same rhyming couplets. (FAC ¶31, Exh. H: 12) This verbatim copying not only further proves Defendants' misappropriation of Plaintiff's work but can itself be the basis of liability. *See Hall v. Swift,* 786 Fed. Appx 711 (9th Cir. 2019) (claims related to the phrase "Playas gonna play" plausibly alleged originality).

Finally, both books employ a similar structure and both discard a standard storyline in favor of non-linear, stand-alone scenes with text-specific affirmations that are accompanied by visual images supporting the theme and which relate to the activity shown on that page. Both books use these affirmations to tell their story. These affirmations can be understood in a sequence but do

not have to be read linearly to make an impact. A reader can open up either book at any page and comprehend and enjoy that double-page spread, without necessarily having read the book from the beginning. *Id.*

Given all of the foregoing similarities in plot, structure, characters, dialogue, and presentation, a reasonable juror could find the books at issue substantially similar. Defendants' motion should therefore be denied.

### 3.     The Imagery in Each Book is Substantially Similar

On page 16 of Plaintiff's Book, Joshua is seen leaping and flying from left to right, his arms extended in front of him, with a makeshift red towel for a cape against a bright blue sky. See FAC ¶31, Exh A p. 9. In Defendants' Book, a Black boy is seen leaping and flying from left to right, his arm extended in front of him, with a makeshift red towel/blanket for a cape also against a bright blue sky. (FAC ¶31, Exh H p. 4) This imagery, in general, is not common, particularly in the world of children's books, and cannot be discounted as a "*scenes-a-faire*". (FAC ¶32)

On page 35 of Plaintiff's Book, Joshua is depicted with very short hair and is shown on the left side of the page with one eye closed, looking into a magnifying telescope pointed to his right. FAC ¶31, Exh. A p.18. The colors immediately around Joshua are orange and warm, while opposite Joshua is a black and blue night sky dotted with little white stars. Id. Unlike most scenes in the book, Joshua is the only young Black boy in the scene. Id. On pages 10-11 of Defendants' Book, a lone Black boy depicted with very short hair is shown on the left side of the page with one eye closed, looking into a magnifying microscope pointed to his right. FAC ¶31, Exh. H p.7. Despite the boy using a microscope, the text notably describes a telescope. *Id.* The colors immediately around the boy are warm and include orange, while the opposite panel depicts a black and blue night sky dotted with tiny white stars. *Id.* Unlike most scenes in the Defendants' Book,

**OPPOSITION TO RULE 12(B)(6) MOTION TO DISMISS**

only the one Black boy is depicted. *Id.* The similarity of these scenes is evidently striking and cannot be discounted as *scene-a-faire*.

On page 25 of Plaintiff's Book, a gleeful Joshua is being hoisted on the shoulders of someone cheering him on at a basketball court. *Id.* at ¶31, Exh. A p.13. His eyes are closed and his arms are raised, and he is holding a basketball with both hands, which is dominant at the lower right side of the page, a hoop on the upper left, all against a sky background. *Id.* In Defendants' Book, a gleeful, Black boy is also seen being hoisted on the shoulders of someone cheering him on at a basketball court. *Id*. at ¶31, Exh. H p. 13. The boy's eyes are closed and his arms are raised, and he is holding a basketball, again dominant on the lower right side of the page. The hoop is on the upper left, with the glinting sun at the upper right against a sky background. *Id.*

On 30-31 of Plaintiff's Book, a crowd of heads of people of varied ages and variously shaded young, smiling Black boys look out towards or past the reader. *Id*. at Exh. A p.16. One of the characters is depicted in a hat. On pages 30-31 of Defendants' Book, the *very same pages* as in Plaintiff's Book, a crowd of heads of people of varied ages and variously shaded young, smiling Black boys looking out towards and past the reader is also shown. *Id.* at ¶31, Exh. H:17. One of the characters is wearing a hoodie. Curiously enough, this same scene plays out across the *same two pages* in each of the two books, which cannot be the result of coincidence.

On page 37 of Plaintiff's Book, an adolescent Black boy is depicted with his arms outstretched against a blue background, and the boy's left hand is facing off into the book margin. *Id.* at Exh. A p. 31. On pages 18-19 of Defendants' Book, an adolescent boy is seen with his arms stretched out against a blue field, and the boy's left hand is cut off by the page margin. Id. at Exh. H p. 15) The figures are both cropped at the bottom of the page almost identically at the chest.

**OPPOSITION TO RULE 12(B)(6) MOTION TO DISMISS**

On page 15 of Plaintiff's Book, a happy Black boy is depicted singing into a metallic microphone as a bystander point at him from his right side. *Id.* at Exh. A p.8. On pages 20-21 of Defendants' Book, a happy Black boy is seen having just sang into a metallic microphone with a bystander pointing at him from the right side. *Id.* at Exh. H p.12.

Plaintiff's Books' endpapers are black-and-white, while the book's interior is fully in color. *Id.* at ¶31. This is not standard and was a conspicuous creative choice that echoes the iconic opening and closing of "The Wizard of Oz." Similarly, Defendants' Books' endpapers are also in black-and-white, and the interior is also fully in color. *Id.*

Finally, the look, feel, and size of the books are virtually identical. Both of the works are similarly sized and the exact same length with glossy covers and gold or silver foil embossing, exploring an identical theme. *Id.* As illustrator and art director Yusuf Lamont opines, Defendants' Book employs "a brusque copy/paste.[.]" Compared in the aggregate, it is abundantly clear that a factfinder could reasonably conclude that the two books are substantially similar. Defendants therefore cannot meet their burden and their Motion fails.

**4.      Defendants Fail to Address Numerous Similarities**

Defendants' arguments ignore numerous comparisons, including actual pages from each book, and instead focus on "differences," which are largely irrelevant. Both the subject matter and the expression, such as the image of the boy leaping in the air and looking through a telescope, are uncommon in children's books. Put another way, Defendants have not established that it is "indispensable to the genre" or so common as to constitute a "*scene-a-faire*", and it is their burden to do so. While the fact that both books promote self-love through a culture of affirmation would not be enough in and of itself to give rise to a copyright infringement claim, the selection and arrangement of protectable (and unprotectable) elements are uncannily similar; the expression of

the themes in both works cannot be chalked up to coincidence. *See also Meeropol v. Nizer*, 560 F.2d 1061 (2d Cir. 1977) (words copied amounted to less than one percent of defendant's entire work nevertheless actionable). In fact, the Motion completely ignores the detailed similarities between the two books and the categories which give rise to a finding of substantial similarity such as the tone, characters, and theme.

Defendants instead opt to categorize the similarities between the two books as unprotectible elements. But, even if that were true, *"*if the selection and arrangement are original, [unprotectable] elements of the work are eligible for copyright protection." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). The substantial constellation of similarities reflects a likelihood of copying. To the extent that Defendants attempt to point out dissimilarities, those are to be expected, and they do not negate the numerous similarities. See, *Sheldon,* 81 F.2d at 56 ("[I]t is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate.").

> **5.** **Unprotectable Elements Can be Protectable When Creatively Selected, Arranged, and Considered in a Selection and Arrangement Analysis**

In applying the substantial similarity "test, a court is **not** to dissect the works at issue into separate components and compare only the copyrightable elements." *Boisson v. Banian, Ltd*, 273 F.3d 262, 272 (2nd Cir. 2001)(emphasis added). But this is what Defendants urge in requesting that the Court "splinter" the works before eliminating each similar element from the analysis as "unprotectable." Defendants' approach is misguided because it is well established that "the selection and arrangement of unprotectible elements can be sufficiently original to warrant protection." *Int'l Diamond Importers, Inc. v. Oriental Gemco* (N.Y.), Inc., 64 F. Supp. 3d 494, 522 (S.D.N.Y. 2014); see also *Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d at 565 ("selection,

coordination, arrangement, and expression" of unprotectable elements is itself protectible.). Therefore, infringement can be found "not only through literal copying of a portion of [the work]," but also where "numerous aesthetic decisions embodied in the plaintiff's work" are copied. Id. at 512–13. This is the actual analysis that the factfinder must perform. The factfinder will query "why are so many of the same aesthetic and narrative choices made in both books?" The commonsense answer is copying, and not coincidence, especially given the "thick" protection of her book that results given that there were so many aesthetic choices available.

To the extent that any elements of Plaintiff's book are considered *scene-a-faire* (which Plaintiff disputes), Plaintiff's Book at minimum qualifies as a creative and protectable arrangement of those elements, and Defendants have misappropriated that selection and arrangement. Plaintiff received a valid copyright registration for Plaintiff's Book, which is *prima facie* evidence of originality under  17 U.S.C. §410(c). It cannot be disputed that Plaintiff's creative selection, arrangement, and expression of affirmational and appealing scenes evinces "some minimum degree of creativity." *Boisson,* 273 F.3d at 269. Even assuming *arguendo*, that any portions of Plaintiff's Book are *scene-a-faire*, it is nevertheless protectible.

Defendants' claims that Plaintiff has failed to allege copying of the Plaintiff's Book as a protectable arrangement are unavailing. As discussed above, Defendants repeatedly attempt to break down both works at issue into individual elements so that Defendants can then claim they are unprotectable *scenes-a-faire*, but (a) they have not carried their burden to show that any particular scene is a *scene-a-faire* and (b) the proper "inquiry focuses on whether the alleged infringer has misappropriated the original way in which the author has 'selected, coordinated, and arranged the elements of his or her work." *Int'l Diamond Importers* at 513. While Defendants point to individual elements such as children playing basketball or a boy wearing a cape as individually

unprotectable, they fail to prove that the expression at issue is unprotectable and to challenge the assertion that the selection and arrangement of those elements is protectible.

Plaintiff plead that Plaintiff's Book is an illustrated children's book celebrating and empowering young Black males through a 32-page collection of creatively selected and expressed depictions of Black boys as cape-clad superheroes, being lifted up for a slam dunk, making hip hop music, and using instruments for scientific discovery, alongside short but impactful affirmations. Plaintiff has further alleged, through holistic analysis and expert testimony, that Defendants' Book has copied this selection, expression, and arrangement. A reasonable juror could therefore find infringement. Defendants' Motion should be denied.

**6.    Whether Only Unprotectable Ideas or *Scene-a-Faire* Have Been Copied Should Be Reserved for a Jury**

Whether the Court can determine that only non-protectable elements have been copied depends heavily on the facts, as there are instances of copyright infringement "where the question of substantial similarity cannot be addressed without the aid of discovery or expert testimony." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir. 2010). Defendants rely on *Gaito* to claim that the Court has before it all that is necessary to determine that only *scene-a-faire* or unprotectable ideas have been copied, but *Gaito* only applies when it is essentially a comparison of one image to another, not an entire book. *Gaito* at 65; see also *Horizon Comics Prods., Inc. v. Marvel Ent.*, LLC, 246 F. Supp. 3d 937, 940 (S.D.N.Y. 2017) (comparing only visual character and poster designs). Indeed, the court in *Gaito* expressly stated "nothing in this opinion should be read … to indicate that the question of non-infringement is properly considered at the pleadings stage without discovery." *Id.* at 65. This case concerns not only text and visual imagery, but the creative selection and arrangement of the visuals, text, story structure, themes,

and overall presentation of each work, as described above. Thus, as evidenced by Plaintiff's expert reports, the issue of substantial similarity requires not a cursory visual comparison but an in-depth analysis of the elements of each work and their selection and arrangement, and whether those arrangements are "protectable," and whether they were copied. Accordingly, a determination that only *scene-a-faire* or unprotectable ideas have been copied in this case should be reserved for the finder of fact after discovery. Furthermore, while this Circuit has not addressed the issue, other Circuits recognize that *scenes-a-faire* is an affirmative defense for which the  meaning that Defendants bear the burden. *See: Etse-Hokin v. Skyy Spirits Inc.,* 225 F.3d 1068, 1082 (9th Cir. 2000) (*scenes-a-faire* is an affirmative defense). Defendants have not carried that burden.

## 7.   Copying of Even a Portion of Plaintiff's Book is Copyright Infringement

A finding of copyright infringement does not require a work to be copied in its entirety. *Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 559 (S.D.N.Y. 2009). Indeed, it is well established that "dissimilarity between some aspects of the works will not automatically relieve the infringer of liability, for no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated." *Blakeman v. The Walt Disney Co.*, 613 F. Supp. 2d 288, 305 (E.D.N.Y. 2009), citing *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996). Therefore, Defendants' copying of any original elements of Plaintiff's Book amounts to copyright infringement.

Defendants' repeated attempts to evade liability by pointing to small and superficial elements they have not copied are thus unavailing. Defendants claim the Defendants' Book is not substantially similar to Plaintiff's Book because only Plaintiffs' Book is framed around a named protagonist, and because some of the depicted activities in the two books are not shared. However,

Defendants' lack of a framing narrative is belied by the consistent use of the words "I am" and it does not alter the fact that both books depict a series of discrete scenes of grade school aged Black boys engaged in varied affirmational activities presented as double-page tableaus with small amounts of affirmational text in a large format. Nor does the fact that some scenes differ between the two books excuse Defendants' near verbatim copying of a red-caped flying superhero scene, a scene of an assisted basketball dunk, a scene of the boys making Hip Hop music, or a scene of a single Black boy gazing into a lens and imagining what he could find in space. A reasonable juror could thus find that, at minimum, Defendants copied original elements of Plaintiff's Book.

For "textual works, where two otherwise dissimilar pieces include similar sentences and wording, courts frequently apply the "fragmented literal similarity test," which "focuses upon copying of direct quotations or close paraphrasing." *Penguin Random House LLC*, 270 F.Supp.3d at 745 (citation omitted). By contrast, when "two works do not have literal, word-for-word similarity, courts sometimes apply the "comprehensive non-literal similarity" test, weighing the "total concept and feel" of the works including their "theme, characters, plot, sequence, pace, and setting." Id., at 744, citing 4 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 13.03 [A][1] at 13–24 (1997)(remaining citation omitted). The "comprehensive non-literal similarity" test allows a plaintiff to enforce its copyright in a case where, though there is little or no word-for-word similarity, the defendant has nonetheless appropriated "the fundamental essence or structure" of plaintiffs' work. Id.

Here, at a minimum, Plaintiff has adequately alleged that Defendants have copied the "fundamental essence" and "structure" of Plaintiff's work. Because the "characters and events" in Plaintiff's work "spring from the imagination of" Plaintiff's principal, and those are recreated in Defendants' Book, that Book "plainly copies copyrightable, creative expression." *Penguin*

*Random House* at 746 (citation omitted). Defendants' Book uses "more than general types and ideas and have appropriated the pictorial and literary details embodied in the complainant's copyrights," and are thus infringing. *Penguin Random House* at 746–47, citing *Detective Comics*, 111 F.2d at 433.

Moreover, when the works at issue are created for children, greater "[c]onsideration of the total concept and feel of a work, rather than specific inquiry into plot and character development, is [particularly] ... appropriate ... because children's works are often less complex than those aimed at an adult audience." *Lewinson*, 659 F.Supp.2d at 565, quoting *Williams*, 84 F.3d at 589; see also *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir.1976) (explaining that "stories, intended for children, are necessarily less complex than some other works submitted to pattern analysis, [and therefore] ... in addition to the essential sequence of events," courts should "consider the total concept and feel of the works in question." (internal quotation marks omitted)). Given that the books at issue are for children, we should focus here on the "total concept and feel" and when we do it becomes clear that the FAC adequately pleads the claims.

Plaintiff has plausibly alleged that Defendants' have copied qualitatively important portions of the Book. Plaintiff has not only alleged that Defendants have copied the overall concept and feel of her work, but also that numerous, full- and double-page scenes and illustrations have been copied almost verbatim in Defendant's Book. The Motion should be denied.

### C.    The Court May Consider the Expert Reports Attached to the FAC

Plaintiff's expert reports ("Expert Reports") should be considered because they were plainly attached to the complaint and are integral documents incorporated by reference.

### 1.    The Export Reports are Attached to the FAC and are Therefore Part of the Pleadings

**OPPOSITION TO RULE 12(B)(6) MOTION TO DISMISS**

On this Motion, the Court may consider documents attached to the complaint as well as relevant documents upon which the complaint relies:

> "While the court may not consider matters outside the pleadings, it may consider **documents attached as an exhibit** to the Complaint or incorporated by reference, documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken."

> *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)(emphasis added).

Courts have included expert reports among the documents that may be considered under this standard, particularly where the reports were attached to the operative complaint. See *Riverkeeper, Inc. v. Coeymans Recycling Ctr., LLC*, No. 120CV1025GTSCFH, 2022 WL 17819738, at *8 (N.D.N.Y. Dec. 20, 2022) (allowing consideration of expert reports where it "is not beyond the pleadings but has been attached to [p]laintiff's Complaint"). Here, the Expert Reports are both attached to the FAC and helpful to establishing Plaintiff's claim for copyright infringement as set forth in the FAC. Accordingly, the Expert Reports are not matters outside the pleadings, and Defendant's motion to strike should be denied.

Defendants challenge the Expert Reports despite their attachment to the FAC are unavailing. First, Defendants use an unnecessarily restrictive definition of what the Court may consider under Rule 10. While Defendants claim that the Expert Reports should be stricken for not being "written instruments," such a claim ignores the wealth of authority establishing that **any document** attached to complaint as exhibits are part of the pleadings and should be considered on

a motion to dismiss.[3] The Expert Reports are in fact documents attached to the FAC as exhibits and should therefore not be stricken.

Second, even Defendants' authority supports consideration of the Expert Reports. Courts often consider expert reports and similar documents on motions to dismiss, including in copyright infringement cases. See *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 51 (2d Cir. 1986) (allowing consideration of report by literary expert in case of copyright infringement); see also *Riverkeeper, Inc*, at *8. Defendants point to the court in *Ong v Chipotle Mexican Grille, Inc.*'s refusal to consider an expert report. However, *Ong* was a case of securities fraud, and the court specifically couched its striking of the expert report in the context of securities fraud cases, stating that the expert report could not be considered "under the [Private Securities Litigation Reform Act]" and citing to a Fifth Circuit decision to "strike an expert opinion attached to a complaint **in a securities fraud case**." *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 223 (S.D.N.Y. 2018) (emphasis added). The decision in *Ong* was not a blanket bar on the consideration of expert reports attached to complaints but was carefully and specifically tailored to their use in a specific kind of case. Securities fraud is not at issue here and given that other courts have expressly permitted the consideration of expert reports in other kinds of cases, including copyright infringement cases, the Defendants reliance on *Ong* is not persuasive.

---

[3] See *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010)("it is well settled that in ruling on such a motion, a district court may consider 'the facts as asserted within the four corners of the complaint' together with '**the documents attached to the complaint as exhibits'**)(emphasis added); See also *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)( "In considering a motion to dismiss for failure to state a claim, a district court may consider the facts alleged in the complaint, **documents attached to the complaint as exhibits**"); *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (allowing consideration of "**documents attached** to or incorporated by reference in the Complaint") (emphasis added); *Riverkeeper, Inc. v. Coeymans Recycling Ctr., LLC*, No. 120CV1025GTSCFH, 2022 WL 17819738, at *6 (N.D.N.Y. Dec. 20, 2022) (allowing consideration of "**documents attached as an exhibit** to the complaint") (emphasis added).

**OPPOSITION TO RULE 12(B)(6) MOTION TO DISMISS**

### 2.  The Expert Reports are Incorporated by Reference

The Expert Reports should also be considered because the FAC incorporates them by reference.  It is "well settled" that a court may consider "any document incorporated into the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal citations omitted). The Expert Reports are not only attached to the FAC, but they are also both expressly identified and repeatedly relied upon, quoted, and cited throughout the body of the FAC to establish Plaintiff's claims that Defendant's book infringes upon Plaintiff's original work. (FAC, pp. 28, 29, 31) (referencing the Expert Reports directly at least 8 times, including direct quotes and reproductions of images from the Expert Reports). The Expert Reports are therefore clearly, definitely, and substantially referenced in the FAC, and are thus documents incorporated by reference which should be considered in a motion to dismiss.

Defendants argue that the Expert Reports cannot be incorporated by reference because they were "drafted for the purpose of litigation," but this is untrue. Defendants cite to *Ong* to support this claim, however the court in *Ong* rejected the incorporation of documents prepared in the course of litigation not because they were drafted for the litigation, but because the fact that they were drafted after litigation commenced proved that they were "issued after [the] action was initiated" and therefore "logically could not have been contemplated by, much less internal to, the complaint." Indeed, later cases citing *Ong* have made it clear that the timing of the document's creation was the dispositive factor, using *Ong* to establish that documents "cannot be said to have been incorporated by reference or be integral to the Complaint because they were not referenced in it and, indeed, post-date its filing." *Jordache Enterprises, Inc. v. Affiliated FM Ins. Co.*, No. 21-

CV-5433 (RA), 2022 WL 986109, at *6 (S.D.N.Y. Mar. 31, 2022), citing *Ong* at 224. Here, the Expert Reports were each drafted prior to the filing of the FAC,[4] and they were first filed alongside the FAC as attachments, and therefore could have been and indeed were contemplated by Plaintiff in drafting the FAC. As the Expert Reports do not post-date the filing of the FAC, and are substantially referenced in the FAC, they are properly incorporated by reference.

    **3.**    <u>The Expert Reports May Be Relied Upon to Establish Substantial Similarity</u>

"In a copyright infringement case, the plaintiff must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003). "To satisfy the second element of an infringement claim—the unauthorized copying element—a plaintiff must show both that his work was actually copied and that the portion copied amounts to an improper or unlawful appropriation." *Id.* at 51. It is well established that "expert testimony may be used to assist the fact finder in ascertaining whether the defendant had copied any part of the plaintiff's work." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992).

Here, the Expert Reports consist of a literary expert outlining various similarities of plot, character, theme, mood and tone, and sequence of events between the two illustrated books and side-by-side comparisons of the illustrations in both works. See FAC, Exs. J, K. Both Expert Reports serve to establish Plaintiff's claims and show Defendants' copying of Plaintiff's work through highlighting striking and substantial similarities between the two and are therefore

---

[4] *See,* FAC Ex. J (prepared February 16, 2021); FAC Ex. K (prepared April 22, 2021); FAC Ex. L (prepared in or around early 2021). Plaintiff has chosen to withdraw Exhibit I (the report of Warren Drummond) in order to streamline the dispute.

**OPPOSITION TO RULE 12(B)(6) MOTION TO DISMISS**

appropriate expert materials for a case of copyright infringement. Exhibit J to the FAC is the preliminary report of Dr. David Román, a well credentialed English professor at the University of Southern California. Professor Román's report details similarities among, *inter alia*, the tone, themes, setting, mood, characters, plot, and sequence of events of the two works. Exhibit K to the FAC is a report by Yusef Lamont, an illustrator and graphic designer (primarily for children's projects) which details the similarities between the illustration, the prose, and the end papers of both books (including the stylistic choice to print the inner leaves in black and white). Exhibit L to the FAC is a letter from children's licensing expert Lawrence Christmas, opining on the similarities between the two works.

Defendants fail to establish that the Expert reports are redundant, immaterial, impertinent, or scandalous matter that should be stricken. Defendants claim that the reports should be stricken because they admit that they accessed Plaintiff's work and that this motion only concerns Defendants' improper or unlawful appropriation, which Defendants claim cannot be evidenced by expert reports. However, this argument is unavailing for two reasons.

First, Defendants' admission of access does not make the Expert Reports irrelevant. Actual copying may be established "by direct evidence of copying or by indirect evidence, including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony." *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 140 (2d Cir. 1992), as amended (June 24, 1992). And it is well established that "[e]xpert testimony may be offered in support of a claim of actual copying." *Silberstein v. Fox Ent. Grp., Inc.*, 424 F. Supp. 2d 616, 624 (S.D.N.Y. 2004), *aff'd sub nom. Silberstein v. John Does 1-10*, 242 F. App'x 720 (2d Cir. 2007). Here, Defendants have admitted access but not actual copying. As such, expert testimony, such as the Expert Reports, is still highly relevant to this case, as it can evidence actual copying by

demonstrating the similarities between the works at issue. Accordingly, Defendants' admission of access is not grounds to strike the reports or bar them from consideration at a motion to dismiss.

Second, even if Defendants fully concede actual copying, the Expert Reports may still be considered to establish unlawful appropriation by evidencing substantial similarity between the works at issue. The Second Circuit has established that expert testimony may be considered on the question of substantial similarity "where expert testimony shed valuable light on the subject matter of litigation and trial judge remained trier of fact." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992). In *Walker v. Time Life Films, Inc*., the Second Circuit held that a district judge had not erred in considering the expert testimony of "literary expert submitted by defendants, which analyzed the plot, themes, structure, characters and pace of both works" to determine substantial similarity. 784 F.2d at 51-52. Just as in *Walker*, the reports here speak to the plot, themes, structure, characters, mood, and pace of both works to shed valuable light on the children's book which are the subject matter of this litigation. Accordingly, the Court should allow the consideration of the Expert Reports to evaluate substantial similarity.

Finally, the expert testimony may be considered in analyzing whether the material that Defendants copied is protectable, whether the similarities are qualitatively important, and whether something is or is not a *scene-a-faire*. *See Computer Associates Intern., Inc. v. Altai, Inc.* 982 F.2d 693, 714 (permitting expert evidence was not error where expert testimony shed valuable light on subject matter of litigation and trial judge remained trier of fact). This portion of the opinion addresses not whether the two Books are substantially similar but instead the factual and industry-standard questions of whether the material that was copied is prevalent in the prior art or otherwise standard in the literary marketplace.

**OPPOSITION TO RULE 12(B)(6) MOTION TO DISMISS**

## IV.   <u>LEAVE TO FURTHER AMEND SHOULD BE GRANTED</u>

While the FAC is adequately pled, should this Court determine otherwise, Plaintiff respectfully requests leave to amend its complaint under the "liberal" standard of Fed.R.Civ.P. 15. It is common practice to grant leave to amend the complaint when a motion to dismiss is granted and it appears possible to address the issues via amendment. *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990).

## V.   <u>CONCLUSION</u>

Plaintiff has adequately pled its claims and respectfully requests that the Court deny Defendants' Motion to Dismiss. In the alternative, Plaintiff respectfully requests leave to further amend the operative pleading.

Dated: March 20, 2023
New York, New York

Respectfully submitted,

*By: /s/ Scott Alan Burroughs*
**DONIGER / BURROUGHS**
Scott Alan Burroughs, Esq.
247 Water Street, First Floor
New York, New York 10038
Telephone: (310) 590-1820
scott@donigerlawfirm.com

**LOWE & ASSOCIATES, P.C.**
Steven T. Lowe, Esq.
8383 Wilshire Blvd., Suite 1038
Beverly Hills, CA 90211
Telephone: (310) 477-5811
Facsimile: (310) 477-7672
steven@lowelaw.com

*Attorneys for Plaintiff*